**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL PARKS CONSERVATION ASSOCIATION, et al.,** | : <br> : <br> : |
| **Plaintiffs,** | : <br> : |
| v. | : Civil Action No. 11-130 (GK) <br> : |
| **UNITED STATES DEPARTMENT OF INTERIOR and UNITED STATES DEPARTMENT OF AGRICULTURE,** | : <br> : <br> : <br> : |
| **Defendants.** | : |

**MEMORANDUM OPINION**

Plaintiffs, ten non-profit environmental and conservation organizations (together, "NPCA"),[1] bring this suit against Defendants, the United States Department of the Interior ("DOI") and United States Department of Agriculture ("USDA," collectively the "Departments"), for declaratory and injunctive relief, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 555(b). NPCA seeks a declaratory judgment that Defendants have unreasonably delayed responding to its petitions for formal certification of reasonably attributable visibility impairments in various national parks and wilderness areas. Plaintiffs also seek an order requiring the Departments to act on the petitions within 30 days. The Arizona

---

[1] Plaintiffs are National Parks Conservation Association, WildEarth Guardians, Grand Canyon Trust, Northwest Environmental Defense Center, San Juan Citizens Alliance, Center for Biological Diversity, Washington Wildlife Federation, To' Nizhoni Ani, Dooda Desert Rock, and Sierra Club.

Public Service Company, Central Arizona Water Conservation District, and Salt River Project Agricultural Improvement Power District have intervened on behalf of Defendants. The matter is now before the Court on Defendants' Motion to Dismiss [Dkt. No. 12]. Upon consideration of the Motion, Opposition, and Replies, and the entire record herein, and for the reasons stated below, Defendants' Motion to Dismiss is **granted**.

I. **BACKGROUND**

A. **Statutory Framework**

The Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q (2011), is the principal federal statute designed to "protect and enhance the quality of the Nation's air resources." Id. § 7401(b)(1). Section 169A addresses visibility impairment in certain national parks and wilderness areas, which are designated as "mandatory class I Federal areas."[2] Id. § 7491(a)(1). Section 169A of the CAA establishes a "national goal" of preventing and remedying visibility impairment in Class I areas resulting from manmade air pollution.[3] Id.

---

[2] "Class I" areas include all international parks, national wilderness areas which exceed 5,000 acres in size, national memorial parks which exceed 5,000 acres in size, and national parks which exceed 6,000 acres in size, which were in existence on August 7, 1977. See 42 U.S.C. § 7472(a). The term "mandatory class I Federal areas" is defined as "Federal areas which may not be designated as other than class I." Id. § 7491(g)(5).

[3] Although the CAA distinguishes between "mandatory class I areas" and "class I areas," this distinction is not relevant for the purposes of this Memorandum Opinion. Therefore, the Court will
(continued...)

Section 169A charges the Environmental Protection Agency ("EPA") with the responsibility to issue regulations to assure reasonable progress toward the CAA's national visibility goals. Id. § 7491(a)(4). In order to meet these goals, Section 169A instructs EPA, in consultation with the Secretary of the Interior, to require those States it identifies as containing Class I areas "where visibility is an important value," as well as States from which emissions "may reasonably be anticipated to cause or contribute to impairment of visibility" in Class I areas, to submit State implementation plans ("SIPs") for safeguarding visibility in protected Class I areas. Id. §§ 7491(a)(2), (b)(2).

EPA must require these SIPs to include "such emission limits, schedules of compliance and other measures as may be necessary to make reasonable progress." Id. § 7491(b)(2). In particular, these SIPs must require the installation and operation of the "best available retrofit technology" ("BART")[4] at certain major

---

[3](...continued)
simply refer to "Class I areas."

[4] BART means:

> an emission limitation based on the degree of reduction achievable through the application of the best system of continuous emission reduction for each pollutant which is emitted by an existing stationary facility. The emission limitation must be established, on a case-by-case basis, taking into consideration the technology available, the costs of compliance, the energy and nonair quality environmental impacts of compliance, any
> (continued...)

3

stationary sources placed in operation between 1962 and 1977. Id. § 7491(b)(2)(A). The BART provisions apply to specific types of stationary sources that emit more than 250 tons per year of any pollutant. Id. § 7491(g)(7).

The same CAA implementation requirements apply to Indian reservations.[5] An Indian tribe, like a State, may submit a tribal implementation plan ("TIP"). Id. § 7410(o). In instances where the tribe does not assume this responsibility, EPA must promulgate a federal implementation plan ("FIP") applicable to the reservation. 40 C.F.R. § 49.11.

In addition to EPA and the States, Federal Land Managers ("FMLs"),[6] such as the Departments in the present case, play a role in this process. In particular, the appropriate FMLs must be consulted regarding any SIP revision intended to meet the requirements of section 169A. 42 U.S.C. § 7491(d).

---

(...continued)
> pollution control equipment in use or in existence at the source, the remaining useful life of the source, and the degree of improvement in visibility which may reasonably be anticipated to result from the use of such technology.

40 C.F.R. § 51.301.

[5] Two of the facilities identified in NCPA's petitions, the Navajo Generating Station and the Four Corners Power Plant, are located on Navajo tribal land.

[6] Federal Land Manager "means, with respect to any lands in the United States, the Secretary of the department with authority over such lands." 42 U.S.C. § 7602(i).

B.  **Implementing Regulations**

In 1980, EPA issued regulations addressing "reasonably attributable visibility impairment," meaning "visibility impairment that is caused by the emission of air pollutants from one, or a small number of sources." 40 C.F.R. § 51.301. In relevant part, these visibility impairment regulations state that "[t]he affected Federal Land Manager may certify to the State, at any time, that there exists reasonably attributable impairment of visibility in any mandatory Class I Federal area." Id. § 51.302(c)(1). If such a certification is issued more than six months before a SIP or a SIP revision is scheduled to be submitted for EPA approval, the subsequent SIP must include appropriate BART determinations and compliance schedules for each of the offending stationary facilities. See id. § 51.302(c)(2)(iii).

In 1999, EPA issued additional regulations to carry out its statutory mandate under Section 169A. These include the "regional haze program requirements," id. § 51.308, which are far broader in scope than the visibility impairment regulations contained in Section 51.302. They apply to all "BART-eligible sources" within the State. Id. § 51.308(e). A BART-eligible source is defined as any of a number of specified types of stationary facilities first placed into operation between August 7, 1962 and August 7, 1977, with the potential to emit 250 tons per year or more of any

5

pollutant. Id. § 51.301. In most relevant part, each State must submit a SIP:

> containing emission limitations representing BART and schedules for compliance with BART for each BART-eligible source that may reasonably be anticipated to cause or contribute to any impairment of visibility in any mandatory Class I Federal area, unless the State demonstrates that an emissions trading program or other alternative will achieve greater reasonable progress toward natural visibility conditions.

Id. § 51.308(e). Under EPA's regional haze regulations, "[a] single source that is responsible for a 1.0 deciview change or more should be considered to 'cause' visibility impairment"[7] and the threshold for "determining whether a source 'contributes' to visibility impairment should not be higher than 0.5 deciviews." Id. pt. 51, App. Y (2005).

### C. Factual and Procedural Background[8]

Plaintiffs bring this case based on three administrative petitions they submitted to the Defendants, who are the FMLs for the lands relevant to Plaintiffs' petitions. The first petition,

---

[7] A deciview is a "haze index" calculated "such that uniform changes in haziness correspond to uniform incremental changes in perception across the entire range of conditions, from pristine to highly impaired." 40 C.F.R. § 51.301.

[8] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, unless otherwise noted, the facts set forth herein are taken from the Complaint.

6

dated May 5, 2009, requested that DOI issue a certification that the visibility in Class I areas within its jurisdiction is impaired and that the impairment is reasonably attributable to emissions from the Navajo Generating Station in Arizona.[9] The second petition, dated June 24, 2009, requested a similar certification from DOI with respect to emissions from the Centralia Power Plant ("Centralia") in Washington State.[10] The third petition, dated February 16, 2010, was sent to both Departments and requested that each Department issue certifications with respect to emissions from the Four Corners Power Plant ("Four Corners") in New Mexico.[11] If issued, these certifications would trigger the requirement that subsequent SIPs include BART determinations and compliance schedules for the power plants in question. See 40 C.F.R. § 51.302(c)(2)(iii).

On January 20, 2011, in the absence of a response from Defendants regarding their petitions, Plaintiffs filed this Complaint [Dkt. No. 1], alleging that Defendants unreasonably

---

[9] National Parks Conservation Association, Sierra Club, Grand Canyon Trust, San Juan Citizens Alliance, To' Nizhoni Ani, and Diné CARE filed this petition.

[10] National Parks Conservation Association, Washington Wildlife Federation, Sierra Club, and Northwest Environmental Defense Center filed this petition.

[11] National Parks Conservation Association, Earthjustice, Sierra Club, San Juan Citizens Alliance, Grand Canyon Trust, Center for Biological Diversity, Diné Care, Dooda Desert Rock, and Wild Earth Guardians filed this petition.

delayed acting on their petitions and seeking an order requiring Defendants to respond to them.

On March 8, 2011, DOI sent a letter in response to Plaintiffs' petitions. Defs.' Mot. Ex. 4. The letter noted that all the petitioned sources have already been determined by the State or EPA to cause or contribute to visibility impairment, and therefore are subject to BART determinations under the regional haze rule. The letter also outlined the actions being taken with regard to each petitioned source. With regard to the first petition, the letter explained that although EPA's "BART determination for Navajo Generating Station has been delayed," EPA is working on the development of a proposed rule to determine BART for the Navajo Generating Station. Id. Ex. 4, at 1. With regard to the second petition, Defendants indicated that the State of Washington has already proposed regional haze SIPs and BART determinations for Centralia. With regard to the third petition, the letter stated that EPA has already proposed a FIP that would establish BART for Four Corners.

The letter further stated that, in light of these proceedings, DOI would "address BART through the existing regional haze BART determinations prior to taking any additional action." Id. The letter explained that DOI reserved the right to certify reasonably attributable visibility impairment if it found that the proposed BART determinations did not adequately mitigate the source's

8

visibility impact and such certification would enhance the potential for mitigation. It concluded: "Until such time, however, this letter fully and finally responds to all of the referenced petitions." Id. Ex. 4, at 2.

On March 17, 2011, USDA also sent a letter to Plaintiffs. Id. Ex. 5. The letter stated that the National Forest Service is actively participating in EPA's development of an FIP to address BART at the Four Corners Plant. Therefore, USDA "is deferring action on the petition until EPA makes its final BART determination." Id. Ex. 5, at 1.

Defendants filed their Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), on April 6, 2011. Plaintiffs filed their Opposition [Dkt. No. 19] on May 4, 2011. Finally, both Defendants and Intervenors filed their Replies [Dkt. Nos. 24 and 25] on May 20, 2011.

## II. STANDARD OF REVIEW

Under Rule 12(b)(1), Plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. See Shuler v. U.S., 531 F.3d 930, 932 (D.C. Cir. 2008). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur

9

v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (citations and quotations omitted). The Court may consider matters outside the pleadings. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). The Court may also rest its decision on its own resolution of disputed facts. Id.

## III. ANALYSIS

In this lawsuit, Plaintiffs seek "an order finding that [D}efendants . . . have failed to act without unreasonable delay on three of [P]laintiffs' petitions" and "establishing a prompt deadline for DOI and DOA to act" on them. Compl. ¶ 1. Defendants argue that the "Departments' Responses fully answered NPCA's request by explaining that, at the present time, the Departments would not exercise their authority." Defs.' Mot. 9. Therefore, according to Defendants, "NPCA's claim is moot" and must be dismissed pursuant to Rule 12(b)(1). Id. Plaintiffs respond that they "have not obtained a definitive decision on their petitions and therefore have not obtained everything they can recover as a matter of law." Pls.' Opp'n 8. Hence, the question presented here is simply whether Defendants' letter responses of March 8 and March 17, 2011, have discharged their duty to respond to Plaintiffs' petitions.

The APA grants "an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). Agencies must "conclude a matter presented to it," including a

10

petition for issuance of a rule, "within a reasonable time." Id. at § 555(b); In re Am. Rivers and Idaho Rivers United, 372 F.3d 413, 418 (D.C. Cir. 2004). Therefore, an agency "is required to at least definitively respond to . . . [a] petition—that is, to either deny or grant the petition." Families for Freedom v. Napolitano, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009).

If the agency does not respond to a petition, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); In re Am. Rivers and Idaho Rivers United, 372 F.3d at 418. If, on the other hand, an agency does respond to a petition, even after a suit to compel a response is filed, such a suit is rendered moot. Natural Res. Def. Council v. Nuclear Regulatory Comm'n, 680 F.2d 810, 814 (D.C. Cir. 1982) ("Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue."); Sierra Club, et al. v. Browner, et al., 130 F. Supp. 2d 78, 82 (D.D.C. 2001) ("Because the Court is unable to grant any relief beyond requiring steps that EPA has already taken, [the claim] is moot.").

Plaintiffs argue that Defendants' responses do not render this case moot because the responses do not provide a "definitive decision" and are not "final." Pls.' Opp'n 8-9. An agency action will be considered final when two conditions are met: first, "the action must mark the consummation of the agency's decisionmaking process;" and, second, "the action must be one by which rights or

11

obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-178 (1997) (internal quotations omitted). Specifically, "an agency's denial of a petition to initiate a rulemaking . . . is a final agency action." Fox Television Stations, Inc. v. Fed. Commc'ns Com'n, 280 F.3d 1027, 1037 (D.C. Cir. 2002).

It is clear from the face of the response letters in this case that Defendants have reached a "definitive decision" to deny Plaintiffs' petitions. The Department of Interior's response letter explained that "we believe it is consistent with our affirmative responsibility to protect air quality related values to address BART through the existing regional haze BART determinations prior to taking any additional action," and that "this letter fully and finally responds to all of the referenced petitions." Defs.' Mot. Ex. 4, at 1-2. Hence, DOI declined to initiate the rulemaking sought by Plaintiffs in deference to the ongoing efforts of EPA and the States of Washington and Colorado. Id. Ex. 4, at 1. Similarly, the letter response from the Department of Agriculture stated that "the EPA is preparing the Federal Implementation Plan for Regional Haze that must address Best Available Retrofit Technology" for the Four Corners Power Plant and, because the "EPA has not yet made a final decision regarding BART for the Four Corners Power Plant, USDA is deferring action on the petition until the EPA makes its

final BART determination." Id. Ex. 5, at 1. In short, EPA said "no" to Plaintiffs' requests.

Plaintiffs make much of the fact that the DOI letter noted that "[a]t such time as we determine that the impacts are not adequately mitigated [by the BART determinations in progress] and that certifying reasonably attributable visibility impairment would enhance the potential for mitigation, we have the right to certify at that time" and that the USDA letter "defer[red] action on the petition until the EPA makes its final BART determination." Id. Ex. 4, at 2-3, Ex. 5, at 1. In essence, Plaintiffs contend that because Defendants may certify reasonably attributable visibility impairments in the parks in question at some future time, but are declining to do so now, Defendants have not fully responded to the petitions. Pls.' Opp'n 9-10.

However, Plaintiffs point to no authority for the proposition that a denial of their petitions may only be considered final if Defendants foreclose taking the course of action proposed by Plaintiffs in the future.[12] Plaintiffs have pointed to two cases, neither of which support their argument. In the first case, it was "undisputed that . . . [the agency had] neither denied nor granted

---

[12] It is perfectly understandable why, after a delay of nearly twenty-one months from the submission of their first petition, Plaintiffs filed this suit to compel a response. What is less clear is why Plaintiffs did not dismiss their Complaint after Defendants issued their letter responses, and bring a new action under the APA, challenging the denial of the petitions as "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

13

plaintiffs' petition." Families for Freedom, 628 F. Supp. 2d at 540 (emphasis added). By contrast, in this case, the Department of Interior and Department of Agriculture "have made perfectly plain that, at this time, they will not issue the certifications sought by NPCA." Defs.' Reply 2. In the second case cited by Plaintiffs, the agency refused "to give [petitioners] any answer for more than six years." In re Am. Rivers and Idaho Rivers United, 372 F.3d at 419 (emphasis in original). A rule forbidding Defendants from expressing their openness to reassessing their position in the future would only result in less flexible rulemaking and restrict the discretion placed in the hands of the FMLs. 40 C.F.R. § 51.302(c)(1) (FMLs "may certify to the State, at any time, that there exists reasonably attributable impairment of visibility in any mandatory Class I Federal area.").

Although it is true that Defendants left open the possibility that they may initiate the type of rulemaking Plaintiffs want in the future, they have also made clear that they are denying Plaintiffs' petitions at this time. The Court can no longer grant any relief beyond that already provided by Defendants' responses; Plaintiffs' claims are moot and therefore must be dismissed under Rule 12(b)(1). Natural Res. Def. Council, 680 F.2d at 814 (the court "can hardly order the [agency] . . . to do something that it has already done."); Sierra Club, 130 F. Supp. 2d at 82.

14

**IV. CONCLUSION**

For the reasons set forth above, the Defendants' Motion to Dismiss is **granted**.

An Order will issue with this opinion.

June 30, 2011

/s/
Gladys Kessler
United States District Judge

**Copies to:** counsel of record via ECF